Good morning, and may it please the Court. My name is Matthew Robinson. I'm counsel for the appellant, Arthur Hollis. If I may, I'd like to reserve two minutes for rebuttal. On behalf of Mr. Hollis and his family and myself, I'd like to thank the Court for this opportunity to argue this case. It has a few unique issues. One we touched on earlier with regard to the 404B evidence that was introduced in my client. As a matter of background, though, first let me say Mr. Hollis was charged with three counts. One count of distribution of 50 grams or more of cocaine base, and two counts of operating a facility for purposes of manufacturing cocaine. He went to trial on all three of these charges and was convicted. Mr. Hollis received a sentence of 240 months imprisonment, a sentence which the District Court believed to be the statutory minimum under the law. The main witness during trial was an individual named Mr. Ward, who was an individual who was cooperating with law enforcement and being caught dealing drugs himself, which is not unusual for these type of cases. Mr. Ward conducted an undercover transaction with Mr. Hollis for approximately 222 grams of cocaine base, which was monitored by the authorities. He was wiretapped and video surveilled during this deal. But during the trial, the government didn't just bring this evidence up. The government also introduced the testimony of Shelby Ward, who testified on numerous occasions that he would purchase drugs from Mr. Hollis, the appellant here. And that testimony was completely unnecessary under the circumstances and highly prejudicial. And essentially what he did was testify that, you know, I've known Mr. Hollis for many years. For the past three or four years, I may have dealt with him 30 or more times on various amounts of drugs and different types of cocaine or cocaine base. But there were no specific instances testified to of transaction, just general allegations and vagaries saying, well, I dealt with Mr. Hollis on occasion. It's the appellant's position that that testimony was inadmissible under 404B. An objection was made before this testimony, and the trial court did allow the testimony to be introduced. The trial court did instruct the jury after the testimony that it should not the jury should not confuse that testimony with evidence of guilt for the incident offense, which is essentially the one transaction and the fact of maintaining a residence for a facility for drug trafficking or drug manufacturing. It's our position that the court didn't go through the proper analysis in determining whether this evidence was admissible under USAB Basinger. The court did say that it was admissible to prove an element of a crime, essentially knowledge and intent. However, there's four factors under that test, and that's only one factor that the court addressed. It is our position that based upon that there was not sufficient evidence presented to demonstrate that these cocaine transactions occurred prior to this case. And the reason we say that is Mr. Ward is not just a confidential informant who is informing the court and the police later on about transactions that occurred beforehand. There's an additional factor. Mr. Ward also continued to engage in cocaine transactions while he was working for the government. And this is admitted by the government, and the court is aware of it. And in fact, he testified at trial that he conducted transactions after the undercover purchase from Hollis that were not monitored and that were not So, you know, there's sufficient explanation on the record demonstrating that, hey, he was not a — not only was he a criminal and a drug dealer, which we're dealing with often, but he was also continuing to engage in illegal activities while he was cooperating. And for that reason, we're saying that there was not sufficient evidence to demonstrate these allegations of 30 or 40 transactions in the prior two or three years to this instance. There wasn't sufficient evidence to demonstrate that that actually occurred. It's just basically hidden. Excuse me. Just basically Mr. Ward presenting that testimony in front of the jury. But he can be cross-examined if it maybe goes to the weight of the evidence. But a certain amount of that, you don't want to limit it just to the control by Mr. Ward. I agree, Your Honor. And I think I would have to concede that the case law says, you know, just the one witness testifying to prior similar conduct is sufficient. But in this case, it's not just — we do have one witness testifying to this. We also have a witness who is clearly untruthful and continuing to be untruthful and acting in a legal manner after he had basically begun cooperation with the authorities. But you were able to bring that out on cross-examination, I assume. Yeah. Well, like I said, there's testimony on the record concerning that. And forgive me, I was not counsel during trial, so I have the record just like you to look at and to review. But I think that doesn't change that — the fact that they were able to bring that out to assess the credibility of Mr. Ward. Certainly, that goes towards the sufficiency of the evidence in general. But for this particular issue, I don't think that this evidence of prior bad acts was admissible under 404b and the standard that this Court has set out. You have a lot of issues. Let me tell you the one that — the only one that interests me beyond what's in your base, which has a rather tortured and confused history in the many circuit cases, not just the Ninth Circuit. I'm glad you asked. Is it your position that the government needed to charge using the word crack or a chemical definition in the indictment? It's not just in the indictment. I would think that's part of what I think can be done to remedy what's happening here, because this is a good old-fashioned Apprendi issue. We're not even dealing with Booker, and it's funny to call Apprendi an old-fashioned issue at this point. But the fact is that, yes, I would — I would submit that if you're going to sentence someone based upon the increased penalties for crack cocaine, I think you need to charge them appropriately, and you need to also instruct the jury appropriately, and the jury verdict needs to reflect that they've considered this element of the offense. I would submit that crack cocaine, whether crack cocaine is the form of cocaine base that is talked about under 841, that's an element of the offense, and it should be in every case, because it's a factor that moves a sentence above the statutory minimum. Well, in this case, we know the jury, he was charged with cocaine base. We know that's what they convicted on. The expert talked about the difference between cocaine base and a cocaine powder. So the question would be, even if it wasn't charged specifically, and then there was testimony, I believe, from the informant about crack. So even if there were an error in the charging and the lack of a specific jury finding, would it be harmless beyond a reasonable doubt here because of the other testimony? I don't think so, and here's why. Apprendi, you know, sets a very bright-line rule. It's a violation of the Fifth and Sixth Amendment to increase a penalty above the otherwise statutory maximum based on some factor that's not charged in the indictment and prove to a jury beyond a reasonable doubt. Now, we've all seen how the courts have remedied that. In other cases, you know, courts have very jury-verdict forms where they'll list drug amounts to get to the various statutory maximums. Well, crack cocaine versus powder cocaine and cocaine base is a very different – it's similar, but it's very different in the sense that people just assume that cocaine base, when it's talked about, is crack cocaine. Now, I have to concede that certainly there's testimony at the trial concerning crack cocaine. That's why the judge went on and on about that when he was sentencing. Yes. And the jury was never asked to determine anything beyond that it was cocaine base, but he says the evidence was overwhelming. There's lots of testimony that it was crack. That's true. And, you know, I can't deny that there was evidence about smokable forms of cocaine base, which is the Ninth Circuit standard, I believe, and also hard versus soft cocaine and powder versus crack. I understand that, but the jury was never asked to determine it. And the fact that there's evidence on the record doesn't help this error. The jury – you know, the Sixth Amendment is violated when the jury verdict doesn't reflect the accurate statutory minimums and maximums. It's similar by analogy, and I think – and I was thinking about this on the plane, and forgive me if it's a strained analogy. But what if you are charged with manslaughter? The jury is given all the instructions for manslaughter. There's plenty of evidence on the record that this was actually first-degree murder, but the jury returns a verdict, you know, based on what was charged to the jury. The instruction is given to the jury, the jury verdict. Is it in the district court's – within the district court's ability to say, well, there's lots of evidence here about murder? I know the jury returned a verdict that technically says manslaughter. We're going to say he's convicted of murder rather than manslaughter. And I use that analogy because the penalties between whether this is cocaine base or the crack form of cocaine base are very similar. If you – in terms of the extreme nature of what happens here, if this is cocaine – not cocaine base, he's not subject to a statutory minimum sentence based upon what is a crack form. Well, that's the question. If the jury said it is – that whatever he was convicted of, he's convicted of cocaine base because they say that, and that's what the instructions and the indictments said. Then the question is, well, what is cocaine base? And we have the expert says what he thinks it is. Did the expert include in cocaine base something that went beyond crack, making it a larger universe? Or if you take the expert's testimony that says cocaine base is, and then he uses various chemical terms, is that sufficient to say, well, what he's talking about is crack? I think that's sufficient for the evidence standard. But the jury also needs to be instructed that – and that is similar to what happens in the Seventh Circuit. And, you know, and by all means, I disagree with the Seventh Circuit often, but fortunately, there's a case there that I can cite to. But the point is, is that, yes, I think that's sufficient for evidence purposes for the jury to find that the cocaine involved in the case was crack cocaine, the type of cocaine that triggers the statutory, the increased penalties here. And that's the bottom line here is, you know, really, this could be solved very easily by simply adding another, an instruction. Or a jury interrogatory. And on the verdict form to include whether or not this was crack cocaine or some other form of cocaine base, because cocaine base, as we talked about, comes in many different forms. It can be in a liquid form. It can be in a paste form. It can be very many different types of cocaine. But the statute clearly is intended to punish the smokeable form of cocaine base made with baking soda and cocaine hydrochloric that's sold in small quantities and smoked. But the statute imposes a higher penalty on cocaine base, right? So if they find cocaine base, the higher penalties are correct. That's right. But the question is, what do they mean by cocaine base? Well, does that matter? If they find cocaine base, isn't that enough to trigger the statute? I don't think so. And here's why. Because the statute itself, because the various decisions around in the Ninth Circuit, including the shortest decision way back in 91, that, you know, talk about the fact that there are distinctions between the different types of cocaine. The guidelines themselves were amended to define, what do we mean by cocaine base? Because there are so many forms of cocaine base. And they clearly say that it's intended to punish the very limited type of cocaine base called crack on the streets that's made with sodium bicarbonate and that's smoked. It's not intended to punish the type of cocaine base that you get when you're making powder cocaine where it's a cocaine paste. Because all forms scientifically, and the different cases talk about these scientific definitions. And by all means, I'm no scientist. That's why I went to law school. But the fact is that there is a difference. And the courts have recognized this. And in fact, in the D.C. Circuit, in the Brisbane case, they said the statute is ambiguous. We can't tell what the difference is. What type of cocaine base are we supposed to punish an individual based upon? Why don't you save the rest of your time for rebuttal? I will. Thank you very much. May I please have the Court? I'm still Joanne Farrington for the government. Back. Back again. This appeal does raise a number of issues. Mr. Hollis challenges the search warrant that supported the search of his apartment. He challenges the 404B evidence of his prior dealings with the confidential informant here. He challenges the sufficiency of the evidence of his use of the two addresses to manufacture crack cocaine. But the issue that the Court has focused in on here today has been the sentencing issue that he raises. I'll return briefly to the other issues, and certainly if you have any questions. But I think they're well briefed. I mean, because they're ones that we see on a recurring basis. And they're pretty well briefed. You're welcome to talk about them. But I think that the sentencing issue is the one that, at least from my perspective, leaves me with more questions than answers. It is. The issue does have a somewhat tortured history, as you've pointed out, Judge. Let me ask, is the government changing its policy and indicting for crack and then asking for proof to the jury? We always prove that it's crack, because this Court's standard is set out in Shaw is that whatever cocaine-based means, it definitely means the smokable form of hard cocaine. It conforms with the definition that's set out in the guidelines. So the government always proves that when we have charged the manufacturer or sale or trafficking in cocaine-based, that it's crack. But when you say you prove it, here the expert never said that. I mean, we have other cases where the expert kind of says, look, this is crack. This is raw cocaine. This is powder. This is paste. I went through his testimony, and I could be, maybe I'm mistaken, but I never saw him use the word crack once. So how do we know the jury was thinking, ah, cocaine is crack? And the jury was not instructed to find crack. No. The jury was instructed to find cocaine-based, which is the words found in the statute. Correct. The jury, Mr. Hollis was indicted. The jury was instructed, and the jury found the statutory language of cocaine-based. Let me just ask Judge Fletcher's question in a different way. Why? Obviously, you can't change the charging language of the statute because the statute says what it says. But why doesn't the government have, or why don't these cases have a jury instruction that says cocaine-based means? Well, I mean, in other words, we wouldn't be here talking about this if we had a jury instruction so the jury knew what cocaine-based was. That's true. And I haven't seen a jury instruction as to the definition of cocaine-based, even using the language of Shaw. And that would completely avoid this issue. Although the word crack, too, is also an ambiguous word. The English language is rather flexible. And the fact that one decision that's cited here talks about three or four different forms of crack with different levels of purity, depending on how it happens to have been manufactured. The definition that we rely on in our charging decisions and in the cases that we bring is this Court's decision in Shaw. Right. But I guess my question is, the Shaw decision is like 1991 before we had all these hiccups in the – in what needs to be charged with Apprendi and all. So then Apprendi comes along and nobody changes their practice, which seems odd to me because, as you just now described, cocaine and crack could mean different things. How in the world are we supposed to know that the jury was using the Shaw definition? Well, the jury was – had explained to it by both the expert and by Mr. Ward what crack is and what he bought from Mr. Hollis. Where does the expert say this is what crack is? I don't have the page at my fingertips. I've set out at some length in my brief, though, I believe, the evidence that explains crack, how it's produced, what it is, how it's the hard form of cocaine and how it's used. But that was – that was told to the jury. You're telling us it was told to the jury. That's correct, yes. I – the evidence in this case, I believe, was quite extensive to establish that this was the crack form of cocaine. It was the hard, smokable form of cocaine and how it was manufactured. He says – the expert says what cocaine base is. It's where the hydrochloride portion is stripped away from the cocaine molecule. And then he goes in. His testimony is, I found residue on this and cocaine base on that, and, you know, he has different things he found different things – you know, different substances on. Is that testimony enough that cocaine base is hydrochloride stripped from the cocaine molecule? Does that meet Shaw? And describing what it is, what you end up with when that process is completed. I believe that does meet with Shaw, Shaw's definition. The bottom line here, though, I think – Is cocaine – as described in some of these cases, doesn't the term cocaine base go beyond crack in some cases in terms of – depending on how you define it? Yes. Because it could include things that aren't smokable. I'm sorry. It could include substances that are base but are not smokable, like through base. And that, I think, is the distinguishing element between all of those other cases and this case. In other cases, the government, for whatever reason, decided to bring charges of trafficking in cocaine base based on substances that, while they were cocaine and while they were technically, as a scientific matter, cocaine base, weren't a smokable form of cocaine that gives the instant high that characterizes crack that this Court in Shaw focused in on as the intent of Congress in passing enhanced penalties. In this case, that's not the situation. The drug involved here, as the district court said, beyond a shadow of a doubt, was crack and was exactly the form that the – that Congress did intend to target when it passed these substantial enhanced penalties because of the harm that's done by this drug to the community. Unless there are further questions on that issue. I'm sorry. Your position is all you need to do is charge cocaine base, and then if the expert definition of cocaine base includes crack, then you've met Shaw? My position is that legally all we need to do is charge cocaine base, that the government is then responsible to prove in this circuit that it was a smokable form of cocaine typically described as crack. But how do I know the jury – I mean, I guess that's the question. Let's say, how do I know the jury didn't think, well, this stuff is some form of cocaine base, but they were thinking it was something different than crack, but it still fed in the definition of cocaine base. So if the definition of cocaine base is broader, as Shaw suggests, how do we know what the jury thought? Because of the evidence that was presented to the jury. Well, then that goes to a harmless – that it's proven beyond a reasonable doubt, not that there wasn't an error. Correct? Well, I don't think that this Court should speculate that perhaps the jury was hypothesizing that this instead was cocoa paste that had not yet been processed into cocaine, which apparently is also a cocaine base, when there was no evidence of any such material involved in this case. The testimony of – Well, but it seems to me there's a two-step process. The first process is, do we know that the jury, you know, was the – do we know for sure that the jury found that there was crack? And you're saying, well, yeah, because that's what the evidence is. But that's a different question than saying, do we know for sure? Well, we don't know for sure. All we know is that they found cocaine base, which leaves us with some ambiguity. But then the next phase of the analysis is, but does it matter? And it seems to me your – your argument, you're trying to stick your does-it-matter argument onto the first prong, and I'm just wondering whether analytically it has to be analyzed in the second prong. Well, perhaps you could come at it from either direction, but I – when the jury found beyond a reasonable doubt that this defendant trafficked in cocaine base, I don't think that it's reasonable for the Court to say that the jury might have been making up evidence that wasn't before it and thinking about some different form of cocaine base. We have the record that we have, and we have the evidence that was presented to the jury, and we have the jury's conclusions based on that evidence. I – you can come at it, I guess, as from the other side. Well, I mean, I'll – you know, we don't offer a free advice, but it just seems to me that having had all these cases, that there's got to be an easier way for this to be looked at on appeal with either instructions or jury interrogatories or whatever in light of Perendi and even the other circuits which have criticized the Ninth Circuit for maybe making things ambiguous. Actually, the practice now in the District of Alaska is to include – we charge cocaine base, Perendi, in quotes, crack. Nowadays. So hopefully this issue won't be coming up again, although this panel will resolve it one way or the other for us. Briefly, back on the 404B, you've already heard from me on that issue this morning. I would like to point out that this particular situation adds yet another layer to the reasons why some prior acts' evidence can be admitted. Here, Mr. Ward was testifying as to his prior course of dealings with the defendant. It was necessary to point out, to show the jury the relationship between the two, why they trusted each other, what words were meant when he said, have you got nine? What – that sort of thing, his prior drug dealings with the defendant goes to that relationship as well. It's not just intent and knowledge. As the district court specifically found, it was necessary to place in context for the jury the relationship between these two men and why they dealt with each other the way they did. Thank you. Thank you. We'll give you one minute for rebuttal. Thank you. That's all I'll take. I think, you know, first of all, in terms of the proof of cocaine base versus 33-34, but it's dealt with Mr. Ward's testimony of, well, how do you make crack cocaine? And then he later testifies, well, what kind of drugs did you receive from the defendant? He said it was crack. So he testified as to how crack is made, and then he said he did receive crack cocaine, and I can't hide from those facts. And admittedly, had this just been a, you know, I wish this was a better case for me where it could be more clear to the court where it's just based upon testimony of others saying, well, it was crack cocaine and there's no seizures. But the point here is I think Your Honors have seized on it well. This can be fixed. This hasn't been addressed in the Ninth Circuit since Apprendi. The Shaw decision was before the 93 amendments to the guidelines, which made it clear that crack cocaine was what we're talking about. And now that Apprendi has come to fruition and these Sixth Amendment claims have become so prevalent right now on sentencing issues, I think it just simply makes sense to say, look, let's just have – if you're going to offer proof of crack cocaine, and if that proof is going to – if that's going to trigger a statutory enhancement, then why not put that in the jury verdict form and make sure the jury is the one that makes that determination rather than all of us engaging in this speculation? Thank you. Thank you very much. Thank both counsel for your arguments this morning. The case just argued, United States v. Hollis is submitted. Counsel for the next case, United States v. Holstrom, can come up and get prepared and we're going to take a short break and be back for argument in that case.
judges: B. Fletcher, McKeown, Schwarzer